**IN THE COURT OF APPEALS OF IOWA**

No. 18-0202
Filed May 2, 2018

**IN THE INTEREST OF T.K. and D.K.,**
**Minor Children,**

**S.D., Mother,**
    Appellant,

**J.K., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A mother and father separately appeal from the termination of their parental rights to their children. **AFFIRMED ON BOTH APPEALS.**

Elizabeth A. Ryan of Benzoni Law Office, P.L.C., Des Moines, for appellant mother.

Jeremy L. Merrill of Lubinus Law Firm, P.L.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

ConGarry D. Williams of Juvenile Public Defender, Des Moines, guardian ad litem for minor children.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

A mother and father separately appeal from the termination of their parental rights to their children pursuant to Iowa Code section 232.116(1)(f) and (*l*) (2017). Both parents challenge the grounds for termination, contend termination is not in the children's best interests, and assert exceptions apply to preclude the need for termination. Because the parents have not taken significant steps to reengage in substance-abuse treatment or to address the domestic-violence concerns in their relationship, we affirm the termination of their parental rights to their children.

**I. Background Facts & Proceedings.**

The parents have two children: T.K., age 11, and D.K., age five. The department of human services (DHS) became involved with this family due to concerns regarding domestic violence and marijuana use by the parents. The children were removed on November 4, 2016, after the parents both tested positive for methamphetamine. The children were placed in the temporary legal custody of their maternal grandmother under DHS supervision.

Following the removal of the children from their care, the parents participated in substance-abuse treatment and both achieved and maintained sobriety for approximately seven months. A transition plan was put into place anticipating return of the children to the parents' care in May of 2017. However, near the same time the children were being placed back into the parents' full-time care, the mother tested positive for marijuana. DHS reverted the parents back to semi-supervised visits.

After the children were not returned to their full-time care as planned, the mother and father both struggled with relapse. At the time of the termination

hearing on January 18, 2018, the mother reported she had used methamphetamine within the past week, and the father stated he was actively using methamphetamine "[w]hen it [was] available." Both parents were unemployed and still living together despite the acknowledged domestic-violence concerns present when they are using illegal substances. The mother stated that, following her relapse, she had attempted at least twice to begin inpatient substance-abuse-treatment programs, only to leave after about an hour each time. The mother stated she was now on a wait list for a different program. The mother also acknowledged she had not been consistent with her mental-health treatment. The father stated he had a bed at an inpatient substance-abuse treatment program lined up for the following day but had not yet taken steps to address his continuing substance-abuse issues.

The court determined termination of the parents' parental rights was appropriate under section 232.116(1)(f) and (*l*). With respect to subsection (f), the court held,

> [N]either parent is in any better position to have the children in her or his care today than when the children were first removed from their care. In many respects, the parents are in a worse position now than when the children were removed over [fourteen] months ago. Both are actively using methamphetamine. Neither has been in treatment for several months. Neither [is] addressing their ongoing episodes of domestic violence. [The mother] is not addressing her mental health.

The parents appeal.

**II. Standard of Review and Analysis.**

On our de novo review, *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016), we agree there are grounds for termination pursuant to section 232.116(1)(f) and termination is in the children's best interests. Because we find there are grounds for termination under section 232.116(1)(f), we need not address whether grounds also exist under subsection (*l*). *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

**A. Grounds for Termination.**

Section 232.116(1)(f) provides a court may order the termination of parental rights where "[t]he child is four years of age or older," "has been adjudicated a child in need of assistance" (CINA), "has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days," and "[t]here is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents." At the time of the termination hearing T.K. and D.K. were both over the age of four and were adjudicated CINA.

The mother contends grounds have not been established under section 232.116(1)(f) because there was a trial period with the children at home lasting greater than thirty days. At the termination hearing, the juvenile court asked the

DHS caseworker to clarify how long and with what frequency the children had been transitioned back to their parents' care just before visitation was pulled back:

> THE COURT: Let's clear something up for me. We talked about a re-removal back in late May or some time in that range; right?
> WITNESS: Yes.
> THE COURT: Okay. Really what we had was extended time with the parents, overnights, that type of thing; right?
> WITNESS: That's correct.
> THE COURT: Okay. So, where exactly were we at when we had the—when we pulled back from that? How often had they been staying with or living with the parents for a week, two weeks, month?
> WITNESS: We had started with a transition plan in April where they would spend a weekend overnight there, transition to three days. At the time when we pulled back, they had just started to stay there for full time. So I believe they had stayed there that week three days.
> . . . .
> COUNSEL FOR THE MOTHER: But to follow-up on the judge's question, . . . so they were staying at their parents' home. At the conclusion of that week, was it the plan to return to the parents' care?
> WITNESS: Yes.

Thus, it is clear even if the children could have been considered returned to the full-time care of the parents at all, such time would have been much less than the requisite thirty-day period under section 232.116(1)(f)(3). We conclude it was shown the children were removed from the parents' care for the last twelve consecutive months with no trial period exceeding thirty days.

The father asserts there is not clear and convincing evidence the children could not safely be returned to the parents' care. The father argues, "The children's needs were met by [the father] despite some intermittent drug use throughout the children's lives. While it is agreed that children should not be witness to drug use or domestic abuse, these children's physical needs were met." However, this argument ignores the danger to the children by being placed in a

situation involving substance abuse and domestic violence by the parents. It also ignores the lack of stability for the children.

There may be no greater challenge than to parent a child, and we acknowledge there is no perfect parent. We do expect, however, that a parent's efforts exceed a meager or sporadic level of cooperation with services and that progress will be sufficiently sustained to evoke confidence. Unfortunately, sometimes a parent's willingness and ability to cooperate and progress are compromised by usage of drugs or alcohol, or both. Here, both parents have faced difficulties in avoiding the use of drugs.

The parents' failure to maintain sobriety and to reengage in treatment after relapse has resulted in detrimental effects on the children. Service providers and the parents recognize T.K. is very angry with her parents and D.K. suffers a great deal of sadness being separated from the parents. Neither child has been afforded the comfort they deserve in knowing they will have a stable and safe environment in which to grow. At the termination hearing, the mother acknowledged:

> I think that both my children feel abandoned. I think they feel like they don't matter. I think they feel like they've been waiting on these promises that we've been making over the last year and that we didn't follow through with, so they can't trust us, you know. . . . [T]hey're let down. They are disappointed.

It is clear the children cannot be safely returned to the parents' care under the current circumstances with neither parent having taken significant steps toward maintaining sobriety and providing a safe environment for the children.

**B. Best Interests.**

The detrimental impact on the children reveals why termination is also in the children's best interests.

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren].

Iowa Code § 232.116(2).

At the time of the termination hearing, the children had been primarily placed with the grandmother since November 2016.[1] The mother recognized that in the grandmother's care the children "have a good routine. They have stability. They have a sense of normalcy. You know, they know what to expect. They know nothing crazy is going to happen and turn their world upside down anytime soon."

We note, "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *Id.* (citation omitted). The children have waited long enough for the parents to address their ongoing substance-abuse and domestic-violence issues. The children deserve permanency.

**C. Exceptions.**

---

[1] The children were transferred to their aunt's care from February to June 2017 while the grandmother recovered from open-heart surgery. The aunt moved in to assist with the children, allowing the children to remain in the grandmother's home. The children were returned to the grandmother's care following her recovery.

We also acknowledge the parents contend the exceptions provided in section 232.116(3)(a) and (c) apply to preclude the need for termination in this matter. "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child[ren], whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citation omitted).

Section 232.116(3)(a) states an exception to the need for termination of the relationship between the parents and children exists where "[a] relative has legal custody of the child." We note here temporary legal custody was placed with the grandmother under DHS supervision. However, at the termination hearing, the grandmother expressed she wished to adopt the children. She explained, "I want this to be over for the kids and myself so that we can go on and make a—a life; and then when their parents decide that they want to be clean and healthy and productive people, then they can be a part of their life." Termination of the parents' rights to the children and the subsequent adoption of the children by the grandmother will avoid subsequent legal proceedings which could arise if the children were placed in a guardianship—particularly if the parents were to achieve another short period of sobriety and attempt to terminate the guardianship. Although the children are placed in the custody of their grandmother, that consideration does not outweigh the children's need for permanency, and, thus, the need for termination.

Section 232.116(3)(c) provides "[t]he court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and

convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We acknowledge the strong bond between the children and parents in this case. However, throughout these proceedings the children have been left disappointed and now lack trust in the parents. Here, we do not find the parent-child bond outweighs the need for the children to achieve permanency and stability.

## III. Conclusion.

We affirm the termination of the parents' parental rights pursuant to section 232.116(1)(f), finding grounds for termination have been established, termination is in the children's best interests, and no exception applies to preclude the need for termination.

**AFFIRMED ON BOTH APPEALS.**